**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case Number 1:25-cr-00025** |
| | : | |
| **GERALD MCCOY** | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case Number 1:25-cr-00049** |
| | : | |
| **TERRY HEADEN** | : | |

**DEFENDANTS' MEMORANDUM OF LAW REGARDING POTENTIAL CONFLICT OF INTEREST AND JOINT REPRESENTATION**

Defendants Gerald McCoy and Terry Headen, by counsel, respectfully submit this memorandum in accordance with the Court's Order directing briefing concerning whether counsel's joint representation presents an actual or potential conflict of interest requiring disqualification. In an effort to comply fully with counsel's respective attorney-client privilege obligations to each client, counsel has discussed the issue of privilege and disclosure with both Gerald McCoy and Terry Headen. Each client has knowingly and voluntarily waived the attorney-client privilege to the limited extent necessary to permit counsel to advise this Court, and the respective defendants, that: (1) neither Mr. McCoy nor Mr. Headen intends to cooperate with the government under any circumstances; (2) that they each have been fully advised of their opportunity to cooperate and the myriad consequences of that refusal; (3) that understanding these consequences, both continue to hold fast

to their position to not cooperate; and (4) each is asking this Court to allow counsel's representation to continue.

For these reasons, and as further detailed below, no actual conflict exists. Although a potential conflict is inherent in every joint representation, the risk in this case is remote and fully waivable. Both Defendants have knowingly and intelligently waived their right to independent counsel following repeated advisement and a comprehensive colloquy before the Magistrate Judge. Counsel has had additional conversations with each client regarding the issues subsequent to this Court's Order requiring briefing. Both Mr. McCoy and Mr. Headen have not waivered in their position regarding cooperation, and after again being fully and adequately advised, are asking counsel to remain as their attorney despite any potential conflict of interest. Accordingly, counsel should not be disqualified.

## I. BACKGROUND

### A. Representation of Defendant Gerald McCoy

Counsel was appointed to represent Defendant Gerald McCoy on May 2, 2025. At the request of the government, and Mr. McCoy, the case was "fast-tracked" and portions of the discovery relevant to Mr. McCoy's involvement was provided to counsel and reviewed with Mr. McCoy. The government, at that time, offered Mr. McCoy an opportunity to cooperate. After full advice of his opportunity and the potential consequence of his refusal to cooperate, Mr. McCoy immediately shut down any idea that he would ever cooperate or agree to talk to the government about anyone. Mr. McCoy entered into a plea agreement, and entered his plea, with

the understanding that he could not be sentenced to a single day less than 10 years. Mr. McCoy entered his plea on June 9, 2025 and his case was set for sentencing on November 6, 2025, but was continued to January 30, 2026, due to the unavailability of the probation officer.

Throughout the course of Mr. McCoy's representation, counsel fully explained the nature and consequences of cooperating with the government, including the sentencing implications and the possibility of a motion under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e). Counsel repeatedly advised Mr. McCoy that cooperation could result in a sentence below the ten-year mandatory minimum applicable to the charged conduct and further explained that a refusal to cooperate would mean that he could not receive a sentence below 10 years under any circumstances. Mr. McCoy was given multiple opportunities to reconsider his position.

Despite this extensive advisement, Mr. McCoy unequivocally refused to cooperate. At one point, he expressly instructed counsel not to raise the issue of cooperation again. He has never deviated from this position and has never provided any statement to authorities concerning this case. His refusal to cooperate is categorical and absolute, extending not only to Mr. Headen but to any other individual. Mr. McCoy entered his plea, without the benefit of cooperation, on June 9, 2025.

**B. Retention by Defendant Terry Headen**

Defendant Terry Headen subsequently retained counsel on October 17, 2025, while Mr. McCoy awaited sentencing, and more than four (4) months after Mr.

McCoy entered his plea without cooperation. During the initial and again in follow-up consultations, counsel thoroughly explained the nature and consequences of cooperation, including the possibility of receiving a sentence below the mandatory minimum. Counsel advised Mr. Headen that his advisory guidelines range could substantially exceed ten years and that cooperation could be the only mechanism by which a lower sentence might be achieved. Counsel also repeatedly asked whether Mr. Headen wished to reconsider his position.

Like Mr. McCoy, Mr. Headen adamantly refused to cooperate in any form. From the outset, he consistently stated that he could not and would not consider cooperating and instructed counsel not to revisit the issue. He has never provided any statement to law enforcement regarding this case. Accordingly, counsel's representation did not arise from a situation in which cooperation issues were being navigated simultaneously between defendants. Mr. McCoy's refusal was firmly established well before Mr. Headen retained counsel, and Mr. Headen's refusal was independently formed, equally informed, and equally unequivocal.

**C. Colloquy Before Magistrate Judge Pamela Meade Sargent**

After Mr. Headen's retention and at the government's request, the parties appeared before United States Magistrate Judge Pamela Meade Sargent for a full conflict inquiry. Judge Sargent questioned both defendants at length regarding various conceivable potential conflicts that could arise from joint representation, including issues related to plea negotiations, cooperation, sentencing strategy, and attorney-client privilege.

During this colloquy, both Mr. McCoy and Mr. Headen confirmed that they understood each specific potential conflict that had been identified. They further confirmed that they had discussed these issues with counsel and that they wished to proceed with joint representation notwithstanding those risks. Both defendants knowingly and voluntarily executed written waivers of their right to separate counsel.

Prior to this hearing, counsel sought advice through the Virginia State Bar. That inquiry and response was made an exhibit to the hearing with Judge Sargent in Case Number 1:25-cr-49 (ECF # 46). Counsel was advised that under the circumstances it did not appear that this would be considered joint representation and that conflict of interest waivers would be unnecessary. Inasmuch as this is being considered joint representation by this Court, the waivers executed in open court are completely effective and should be accepted by this Court.

**D. Renewed Advisement Following the Court's Order for Briefing**

Following this Court's Order directing briefing, despite previous instructions from both clients not to approach the subject again, counsel nevertheless met individually with each Defendant for the purpose of determining whether their views on cooperation had changed and to have further discussion and admonition on how their continued refusal would impact their cases. Counsel again explained that neither Defendant could receive a sentence below the ten-year mandatory minimum absent cooperation. Counsel reiterated that their advisory guidelines ranges could

substantially exceed ten years, perhaps 15 to 20 years, and asked whether that fact would change their position regarding their willingness to cooperate.

Both Defendants reaffirmed their absolute refusal to cooperate, notwithstanding the potential sentencing consequences. Their refusal is not limited to cooperation against each other but applies to cooperation against anyone. Their positions remain informed, deliberate, and unwavering.

## II. LEGAL STANDARD

### A. Sixth Amendment Right to Counsel of Choice

The Sixth Amendment guarantees a criminal defendant the right to be represented by counsel of his choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006). This right reflects not only a defendant's interest in a fair trial, but also the fundamental principle that an accused should have confidence in the attorney who represents him. Although this right is substantial, it is not absolute and may yield when necessary to preserve the fairness, integrity, and ethical administration of judicial proceedings. *Wheat v. United States*, 486 U.S. 153, 159 (1988).

### B. Actual Versus Potential Conflicts of Interest

The Fourth Circuit defines an "actual conflict" in the joint-representation context as one that is real and concrete, not speculative, and that requires defense counsel to choose between competing interests of co-defendants, thereby adversely affecting counsel's performance. An actual conflict exists only when counsel

"actively represents conflicting interests," meaning that the lawyer's strategic decisions are materially limited because advancing one defendant's position would harm another's. *United States v. Tatum*, 943 F.2d 370, 375–76 (4th Cir. 1991). By contrast, a potential conflict of interest is one that may or may not develop into an actual conflict as the case progresses. *Wheat*, 486 U.S. at 163. Potential conflicts are inherent in many forms of joint representation and do not, standing alone, require disqualification. Courts are instead required to assess the likelihood that such a conflict will mature into an actual conflict and whether it poses a serious risk to the fairness of the proceedings.

### C. Court's Authority and Discretion Under *Wheat*

Under *Wheat*, district courts are afforded broad discretion to determine whether joint representation should be permitted notwithstanding a potential conflict of interest. *Id*. at 163–64. In exercising that discretion, courts are not required to find that an actual conflict already exists, nor must they accept a defendant's waiver in every case. Rather, the court must make a predictive judgment, based on the facts before it, regarding the risk that a potential conflict could undermine the integrity of the proceedings.

In making this determination, courts consider a variety of factors, including the nature and extent of the potential conflict, whether the defendants' interests are aligned or antagonistic, the likelihood of divergent defenses or sentencing positions, the stage of the proceedings, and the adequacy of counsel's disclosures to the defendants. Courts also assess whether the defendants have received a thorough

explanation of the risks associated with joint representation and whether any waiver of conflict-free counsel is knowing, intelligent, and voluntary.

### D. Waivers of Conflict-Free Counsel

A defendant may waive the right to conflict-free counsel so long as the waiver is knowing, intelligent, and voluntary. *United States v. Garcia*, 517 F.2d 272, 276–78 (5th Cir. 1975). While such waivers do not divest the court of its supervisory authority, they weigh heavily in favor of permitting joint representation where the record demonstrates that the defendants understand the potential risks and nonetheless elect to proceed.

The Fourth Circuit has recognized that acceptance of a conflict waiver is appropriate where the risk of actual conflict is remote, the defendants' interests are aligned, and the district court has conducted a thorough inquiry sufficient to ensure an informed decision. *See United States v. Howard*, 115 F.3d 1151, 1156–57 (4th Cir. 1997).

## III. ANALYSIS

### A. No Actual Conflict of Interest Exists

Under *Cuyler*, an actual conflict requires a showing that counsel's duties to one defendant impair counsel's performance for another. No such impairment exists in this case. Both Mr. McCoy and Mr. Headen have independently and repeatedly refused to cooperate with the government. Both have instructed counsel not to raise the issue of cooperation again, and both maintain identical litigation and sentencing positions, namely non-cooperation regardless of the consequences. Neither

defendant has cooperated, attempted to cooperate, or provided any statement to authorities. There is no divergence in pleas, statements, or strategic objectives between the two defendants. Their respective stances on refusal to cooperate makes any future divergence extremely unlikely.

**B. Only a Remote and Theoretical Potential Conflict Exists**

While all joint representation carries some theoretical potential for conflict, the circumstances here demonstrate that any such risk is minimal. Both defendants categorically refuse cooperation of any kind, not merely cooperation against each other. There is no possibility of antagonistic defenses. Counsel did not advise both defendants simultaneously while each of them had to decide on the spot whether or not to cooperate. Mr. McCoy's position was fixed well before Mr. Headen retained counsel, he was adamantly against cooperating. Mr. Headen asserted his position against cooperation in any form or fashion during our very first meeting, and he has not waivered from that position despite counsel's repeated admonishments regarding the consequences of such unwillingness. Finally, both Defendants executed waivers, execution of those waivers having been preceded by a full and adversarial colloquy before a magistrate judge and further bolstered with multiple rounds of advisement by counsel, both before and after that hearing.

This is not a case in which the risk of future divergence is genuine or imminent. Any potential conflict is speculative and remote. Simply put, neither of these defendants want to point the finger at any other person and counsel is never going to be placed in a position where one defendant is pitted against the other.

### C. The Defendants' Waivers Are Knowing, Intelligent, and Voluntary

The record establishes that both defendants received repeated and detailed conflict advisements from counsel, were questioned extensively by Magistrate Judge Sargent, understood each identified potential conflict, and executed written waivers knowingly and voluntarily. These waivers satisfy the requirements articulated in Garcia, 517 F.2d at 276–78. Nothing in the record suggests coercion, misunderstanding, or incomplete advisement.

### D. *Wheat* Permits Acceptance of the Waivers Under These Facts

Although *Wheat* grants courts discretion to reject conflict waivers, it does not mandate rejection. Rather, the Supreme Court emphasized that trial courts must evaluate each case based on its particular facts. *Wheat*, 486 U.S. at 163–64.

Here, the facts favor acceptance of the waivers. The defendants' interests are aligned, their strategic positions are identical and firmly entrenched, and no future change appears remotely likely. The court-led colloquy and written waivers are thorough and well documented, and counsel has properly advised each client of all potential conflicts and their implications. The separate and distinct procedural posture of the cases also auger in favor of accepting the waivers. One defendant is pending sentencing while the other is in the beginning stages of the court process.[1]

---

[1] These defendants were not charged jointly under Rule 8b and they were not joined for trial pursuant to Rule 13. This begs the question of whether this is in fact a "joint representation" pursuant to Rule 44. It does not appear to meet the definition, and the Virginia State Bar does not view this as "joint representation." Counsel does not concede that this is a "joint representation" but has presented argument in

Disqualification under these circumstances would override the defendants' strong Sixth Amendment interests without any corresponding benefit to the fairness of the proceedings.

## IV. CONCLUSION

There is no actual conflict of interest. Although a potential conflict exists, as in any joint representation, the risk here is remote, fully understood, and validly waived. Both defendants have repeatedly, knowingly, and unequivocally insisted on joint representation.

For these reasons, counsel respectfully requests that the Court find: (1) that no actual conflict exists; (2) that there is good cause to believe that no conflict of interest is likely to arise, (3) that any potential conflict has been knowingly and voluntarily waived; and (4) that it is appropriate for counsel to continue representing both Defendants.

Respectfully submitted,

/s/MATTHEW L. FELTY
Matthew L. Felty, Esq.
FELTY LAW FIRM
Counsel for the Defendants
PO BOX 1417
Abingdon, VA 24212
VSB #74873
Telephone: (276) 676-2660
Facsimile: (276) 676-2667
E-mail: mfelty@feltylawfirm.com

---

support of continued representation despite this Court treating this as "joint representation."

**CERTIFICATE OF SERVICE**

I, Matthew L. Felty, Counsel for Defendants, Gerald McCoy and Terry Headen, does hereby certify that on this 16th day of December 2025, I electronically filed this Memorandum of Law with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/MATTHEW L. FELTY