**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-CR-00049** |
| | ) | |
| **TERRY ALEXANDER HEADEN ET AL.** | ) | |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-CR-00025** |
| | ) | |
| **GERALD MCCOY** | ) | |

**GOVERNMENT'S BRIEF REGARDING CONFLICT OF INTEREST AND DEFENSE COUNSEL DISQUALIFICATION**

Counselor Matthew Felty currently represents two defendants involved in the same drug conspiracy. On December 5, 2025, the Court entered Orders in the above-captioned cases directing the parties to address (1) whether potential or actual conflicts of interest exist based on Mr. Felty's representation of the co-conspirators and (2) whether Mr. Felty should be disqualified, notwithstanding the defendants' written conflict waivers. ECF No. 57 (Case No. 1:25-cr-49); ECF No. 45 (Case No 1:25-cr-25). For the following reasons, a conflict of interest does exist. Despite defendants' written waivers, ECF No. 49 (Case No. 1:25-cr-49); ECF No. 42 (Case No 1:25-cr-25), the Court should disqualify Mr. Felty because of the conflict.

## I. Procedural Background.

Defendant Gerald McCoy and five co-conspirators were charged by criminal

complaint in April 2025. The complaint charged Mr. McCoy with conspiring to distribute methamphetamine. Following Mr. McCoy's arrest, the Court appointed CJA Counsel Matthew Felty to represent him. Mr. Felty first appeared on Mr. McCoy's behalf at the initial appearance on May 2, 2025.

On June 5, 2025, Mr. McCoy waived his right to indictment and pleaded guilty pursuant to a non-cooperation plea agreement to a one-count Information charging him with conspiring to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. Mr. McCoy is scheduled to be sentenced on January 30, 2026. Mr. Felty has represented Mr. McCoy throughout the proceedings to date.

Following continued investigation, Terry Headen and two additional co-conspirators were charged by criminal complaint in September 2025. Case No. 1:25-mj-81; 1:25-mj-82; 1:25-mj-83. The Court appointed CJA Counsel Jaxon Wilkens to represent Mr. Headen, and Mr. Wilkens appeared on Mr. Headen's behalf at both his initial appearance on September 25, 2025, and his detention hearing on October 6, 2025. ECF Nos. 8, 20 (Case No. 1:25-cr-49).

On October 17, 2025, Mr. Felty entered his notice of appearance for Mr. Headen after Mr. Headen retained him. After receiving notice of the filing, the Government contacted Mr. Felty and highlighted Mr. Headen and Mr. McCoy's co-conspiratorial relationship, as was detailed in both defendants' criminal complaint affidavits. Counsel for the Government informed Mr. Felty of the Government's position that the relationship created a conflict.

Shortly after this exchange, Mr. Felty contacted the Government and asked if it intended to call Mr. Headen at Mr. McCoy's sentencing. Undersigned counsel told Mr. Felty the Government did not presently intend to call Mr. Headen, but that position could change. Government counsel also reminded Mr. Felty that Mr. McCoy and Mr. Headen almost certainly each has incriminating information about the other.

On October 22, 2025, a grand jury returned an Indictment against Mr. Headen and the two other co-conspirators charged by criminal complaint in September 2025. The Indictment does not name Mr. McCoy as a defendant because he had already pleaded guilty. However, Mr. McCoy is explicitly named as a co-conspirator in Count One, which charges Mr. Headen with the same offense to which Mr. McCoy pleaded, conspiring to distribute and possess with intent to distribute 500 grams or more of a mixture of substance containing methamphetamine.

That same day, CJA Counsel Mr. Wilkens filed a Motion to Substitute Counsel and Withdraw as Attorney in Mr. Headen's case, ECF No. 28 (Case No. 1:25-cr-49). The United States notified United States Magistrate Judge Pamela Meade Sargent on October 23, 2025, by electronic mail that it requested to be heard on the motion given its concerns of Mr. Felty's representation, copying both Mr. Wilkens and Mr. Felty.

Magistrate Judge Sargent held a hearing on the motion on November 4, 2025. Mr. Wilkens, Mr. Felty, and Government counsel were present. Mr. Felty informed the Court and counsel for the Government that he had sought ethics advice on the issue from the Virginia State Bar (VSB). Mr. Felty presented a copy of his correspondence with VSB, the text of which is included below:

> Good morning, I was appointed to a federal client involved in a conspiracy to distribute controlled substances. This client pled guilty and is pending sentencing. This client has adamantly refused to cooperate with the government and has provided no information about any other co-conspirator. I was recently retained by an individual and it was brought to my attention by the US Attorney's office that I may have a conflict. My current client was involved in distributing drugs with my "new" client. By my assessment, the cases are not in a posture where one client would be any position to act adverse to the other client, and vice versa. My reading of the rules is that even if there was such a concurrent conflict, that conflict would be waivable, in writing, after consultation with each client. There is evidence of direct dealings between the two clients, so I feel that I need to at least have consultations and written waivers on the off chance they offer my "new" client something in exchange for testifying against my current client at sentencing. However, this scenario is highly unlikely as it is the normal practice at sentencing on a plea agreement for the parties to not present any evidence. Am I missing anything? Thank you for your assistance.

> The VSB representative responded as follows:

> I basically agree with your analysis. If the clients were likely to cooperate against one another, I don't think that conflict could be waived because it wouldn't be reasonable to believe you can provide diligent and competent representation to both clients under the circumstances, but here it seems like more of a theoretical conflict than anything else given the state of the initial client's case. If that is correct, then I don't think a "waiver" is exactly the right concept because there is no actual conflict that the clients could provide informed consent to. It may be more of a situation where you disclose to both clients that you represent both and don't think that they will be adverse to each other under the circumstances, but that if the situation changes you will need to revisit and may ultimately be conflicted out of both representations if some direct adversity arises.

At the hearing, Mr. Felty reiterated to the Court that neither Mr. Headen nor Mr. McCoy would cooperate against the other and argued that he should be allowed to represent both co-conspirators.

In contrast, the Government highlighted the direct supplier/customer relationship detailed in the criminal complaint affidavits for both defendants. The Government also

noted that Mr. McCoy's plea agreement did not include a drug weight stipulation. Government counsel argued there is a serious risk of an actual conflict developing because Mr. Headen certainly has information about the drug weight attributable to Mr. McCoy. Following argument, Judge Sargent continued over the hearing to November 10 to allow for Mr. McCoy's appearance.

At the continued hearing, Mr. Felty offered his correspondence with VSB as an exhibit. ECF No. 46 (Case No. 1:25-cr-49). Judge Sargent then conducted a Rule 44(c) colloquy with each Mr. McCoy and Mr. Headen, warned each defendant of what would happen should a conflict develop, and then found each defendant competent to waive the potential conflict associated with Mr. Felty's representation of both. Each defendant signed a written waiver prepared by the Court. ECF No. 49 (Case No. 1:25-cr-49); ECF No. 42 (Case No. 1:25-cr-25). Judge Sargent granted Mr. Wilkens's motion to withdraw and permitted Mr. Felty to represent both Mr. Headen and Mr. McCoy.

## II. Factual Background.

The criminal complaint affidavits filed in both cases detail the relationship between Mr. Headen and Mr. McCoy. ECF No. 3-1 (Case Nos. 1:25-cr-49 and 1:25-cr-25).[1] Facebook messages between Mr. McCoy and Mr. Headen reveal that Mr. Headen was Mr. McCoy's source of supply. Mr. McCoy frequently communicated with Mr. Headen via Facebook, where Mr. McCoy would ask Mr. Headen about pricing and amounts. Mr. McCoy bought drugs directly from Mr. Headen, traveling to Mr. Headen, who resided in

[1] Mr. Headen is an unnamed source of supply, "SOS #1", in the McCoy affidavit.

West Virginia, from Wise County, Virginia. After Mr. McCoy was arrested by local law enforcement in Wise County in March 2024, Mr. Headen even offered to help another individual pay for Mr. McCoy's bond.

## III. Law and Analysis.

### a. The Sixth Amendment Right to Effective Representation Includes the Right to Conflict Free Counsel.

The issue at hand invokes two sources of law: Virginia Rule of Professional Responsibility 1.7, which governs current client conflicts of interest, and the Sixth Amendment to the United States Constitution, which guarantees, *inter alia*, defendants the right to effective assistance of counsel. Even if a conflict is waivable under Virginia Rule of Professional Responsibility 1.7, constitutional demands must also be satisfied.

The Sixth Amendment right to effective assistance includes the right to representation free from conflicts of interest, which can arise when an attorney jointly represents more than one defendant. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002). "Stated another way, the Sixth Amendment right to counsel includes the right to effective assistance free of conflicts of interest, and in the case of a single attorney representing multiple defendants, free from conflicting interests among each of the defendants." *See Hoffman v. Leeke*, 903 F.2d 280, 285 (4th Cir. 1990). This applies when counsel is retained as well as appointed. *Id.* at 287.

Although multiple representation in and of itself does not violate the Sixth Amendment, courts and counsel must be cognizant of conflicts to ensure defendants are

not deprived of their constitutional rights and because unconstitutional multiple representation is never harmless error on collateral attack. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). In fact, prejudice is presumed in collateral attack proceedings based on ineffective assistance of counsel when an actual conflict is present. *See Strickland*, 466 U.S. at 692. The Supreme Court has reasoned:

> It is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see*, *e.g.*, Fed. Rule Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest.

*Id.*

And while the Sixth Amendment also encompasses a defendant's right to choose their own counsel, when a district court "detects conflicts of interest, that court must take whatever steps necessary to ascertain whether the conflicts warrant separate counsel." *United States v. Williams*, 81 F.3d 1321,1324 (4th Cir. 1996) (internal quotation marks and citation omitted). That includes insisting on separate counsel even when all defendants have explicitly waived their right to conflict-free counsel, *see id.*, and in the face of a serious potential conflict that has not yet ripened into an actual conflict. *See United States v. Williams*, 439 F. App'x 254, 256 (4th Cir. 2011) ("The presumption in favor of a counsel of one's choosing may be overcome by a showing of an actual conflict of interest or the serious potential for a conflict of interest.").

For these reasons, although waivable in some instances, courts have an "*obligation*

to foresee problems over representation that might arise" and "head them off beforehand," even where the defendant has made a voluntary, knowing, and intelligent waiver of the right to conflict-free counsel. *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997) (emphasis added); *see also Wheat v. United States*, 486 U.S. 153, 163 (1988). Courts have "substantial latitude" to refuse conflict waivers in cases involving actual conflicts and those involving potential conflicts which may or may not develop into actual conflicts. *Howard*, 115 F.3d at 1155; *see also Hoffman*, 903 F.2d at 288 (stating that trial courts having "broad latitude to permit or prohibit multiple representation"); *United States v. Williams*, 81 F.3d at 1324. As the Supreme Court has counseled, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160.

b. <u>The Risk of Conflict in this Case is Too High Even Considering Defendants' Waivers.</u>

Upon further consideration and review of the facts and circumstances of both cases, the United States now submits that a conflict currently exists, or, at a minimum, there is serious potential for a conflict to develop, and Mr. Felty should be disqualified from both Mr. McCoy's and Mr. Headen's cases to maintain the integrity of both cases.

Mr. Headen's case includes some evidence of firearms, including statements from a cooperating witness who saw firearms at the house where the witness purchased drugs from Mr. Headen and messages between Mr. Headen and a co-conspirator in which Mr. Headen and the co-conspirator discussed firearms. Should Mr. Headen be convicted, the

Government will likely argue at Mr. Headen's sentencing that the firearms enhancement should apply pursuant to U.S. Sentencing Guideline § 2D1.1(b)(1). The Government will also likely argue Mr. Headen does not qualify for the safety valve provision of U.S. Sentencing Guideline § 5C1.2 because of the firearms evidence. The Government will have the burden to prove the applicability of guideline provisions. And a colorful, non-frivolous argument may exist that Mr. Headen should not be disqualified from receiving the benefit of the safety valve based on the Government's firearm evidence.

The safety value guideline provides that the court "*shall* impose a sentence without regard to any statutory mandatory minimum sentence" if it finds a defendant has met certain criteria, including that he did not possess a firearm in connection with the offense and "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." U.S.S.G. § 5C1.2(a)(2), (5) (emphasis added).

The Court inquired about the safety valve at its December 5 status conference pointing to Mr. Headen's limited criminal history. Mr. Felty's response demonstrates the conflict now present. Mr. Felty seemingly conceded at the December 5 status conference that Mr. Headen would not be eligible for the safety valve because of the firearms evidence which would disqualify Mr. Headen if he "possess[ed] a firearm . . . in connection with the offense." U.S.S.G. § 5C1.2(a)(2).

However, upon further review of the evidence and the law applying the safety-valve provision, Mr. Headen may have a viable argument the firearm evidence in this case is

insufficient to disqualify him from safety-valve relief, even if it is sufficient to establish an offense-level adjustment under U.S.S.G. § 2D1.1(b)(1). The two provisions carry different standards. *See United States v. Bolton*, 858 F.3d 905, 914 (4th Cir. 2017). Numerous Courts of Appeals, including the Fourth Circuit, have held that "a weapon enhancement pursuant to § 2D1.1(b)(1) does not foreclose a safety valve reduction despite § 5C1.2(a)(2)'s requirement that a defendant seeking the reduction did not possess a firearm in connection with the offense." *Id.* "Whereas a defendant may be unable to show that any connection between a firearm and an offense is 'clearly improbable,'" as is the standard for the U.S.S.G. § 2D1.1(b)(1), "the same defendant might be able to prove 'by a preponderance of the evidence' that the firearm was not connected with the offense to satisfy § 5C1.2(a)(2)." *Id.*

Mr. Felty's concession of this substantial argument is on its face a conflict, as it obviates his duty to advise his client of the full range of arguments he might make at sentencing and the potential benefits of providing to the Government all evidence and information in Mr. Headen's possession. If Mr. Felty were to argue and win the firearms argument, Mr. Headen's eligibility for the safety valve would then hinge on whether he had a full proffer of his knowledge of the crime prior to sentencing. U.S.S.G. § 5C1.2(a)(5). And the safety valve guideline does not require full "cooperation" in the form of testimony, but merely a fulsome debrief with the Government. Given Mr. Headen's co-conspiratorial, supplier/customer relationship to Mr. McCoy, Mr. Headen's information about the offense would almost certainly be directly adverse to Mr. McCoy's interests, thus creating the conflict. *Cf. United States v. Cortez*, 205 F. Supp. 3d 768, 777 (E.D. Va. 2016)

(recognizing a conflict that could arise between clients because of defense counsel's duty to seek a sentence reduction for substantial assistance for one client). To date, it appears Mr. Felty has avoided that conflict by conceding that Mr. Headen is not safety-valve eligible due to the evidence of firearm possession—which in and of itself demonstrates the conflict that exists.

Relatedly, Mr. Felty may get information from Mr. Headen about Mr. McCoy, or other witnesses who could testify at Mr. McCoy's sentencing hearing. Similarly, he is likely to learn information about Mr. Headen, or other witnesses who may testify against Mr. Headen, from Mr. McCoy. Such confidential information could be useful to the other defendant, but Mr. Felty would not be able to ethically disclose what he learned from one client to the other client or use it to the benefit of the other client. *See United States v. Hersman*, No. 2:13-cr-0002, 2013 WL 820500, at *6 (S.D. W. Va. March 5, 2013) ("Also, it is possible that [defense counsel] possesses confidential information acquired in the course of his representation of each of these clients that might be useful to Defendant but is information [defense counsel] may not ethically disclose."). This is a particularly important consideration in this case where Mr. McCoy has not stipulated to a drug weight in his plea agreement, nor has Mr. Headen agreed to plea or stipulated to a drug weight. Such lack of a stipulation creates a higher risk that drug weight could be in dispute. In other words, each defendant could possess information that could help the other in terms of drug weight or the credibility of other witnesses who may testify, but because of confidentiality, Mr. Felty would not be able to disclose such information gained from one defendant to the other.

Conversely, each defendant could, and likely does, possess information that could be directly adverse to the other, in terms of drug weight or other evidence. Counsel should continue to fully explore with each defendant the potential benefits to them if they were to choose to cooperate with the Government. At the same time, such potential cooperation may require testimony from either Mr. Headen or Mr. McCoy, and were that to occur, as counsel for the other defendant, Mr. Felty should seek to exclude, diminish, or discredit his one client's testimony against the other. *See Cortez*, 205 F. Supp. 3d at 776. Herein lies the additional potential conflict.

The fact that each defendant is currently adamant that he does not want to cooperate does not eliminate the risk of the potential conflict developing into an actual one. The Court should "safeguard the integrity of the criminal proceedings," *id.* at 781, by insisting on separate counsel.

## IV. Conclusion.

All in all, the serious risk of conflict which could deprive the defendants of their constitutional rights in these cases simply is not a tight rope counsel or the Court should walk. Thus, the Court should insist that each defendant be represented by separate counsel going forward and should disqualify Mr. Felty from representing both.

Respectfully submitted,

ROBERT N. TRACCI
Acting United States Attorney

s/ Carrie Macon

Carrie Macon
Virginia Bar No. 95879
Assistant United States Attorney
U.S. Attorney's Office
180 West Main Street, Suite B19
Abingdon, Virginia 24210
(276) 628-4161
(276) 628-7399 (Fax)
USAVAW.ECFAbingdon@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to the counsel of record.

s/ Carrie Macon
Assistant United States Attorney